**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**UNITED STATES OF AMERICA**

**vs.**                          **4:09CR00278-2-WRW**

**SILAS ROYNEL SWIFT**

**ORDER**

Pending is Defendant's Motion to Suppress (Doc. No. 94). The Prosecution has

responded.[1] Oral arguments were held on April 15, 2010,[2] and supplemental briefs were

submitted by the parties.[3] For the reasons set out below, Defendant's Motion to Suppress is

GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Defendant Silas Roynel Swift moves to suppress drug-related evidence found in his SUV

and house. These are the facts:[4]

On the afternoon of September 29, 2009, officers from Arkansas's 16th Judicial District

Drug Task Force got information from a confidential informant about drug activity by

Michael Dawson.[5] The informant said that he had just left a mobile home at 44 Reed Road,

---

[1]Doc. No. 114.

[2]Doc. No. 168.

[3]Doc. Nos. 181, 182.

[4]*See* Doc. Nos. 94, 95, 114, 168, 181, 182. Disputed facts are noted.

[5]Dawson had been the subject of an ongoing drug investigation in the Batesville area. On
other occasions, the Task Force had purchased methamphetamine and marijuana from Dawson
using a confidential informant. There was also an outstanding federal warrant for Dawson (for
drug activity).

Batesville, Arkansas, where Dawson had two to three ounces of methamphetamine and digital scales. The informant also said that Dawson and others were smoking marijuana.

Task Force Investigators drove to the Reed Road residence to observe and get a description of the mobile home and vehicles there, in order to provide information for the search warrant. The officers noticed a small red car in front of the residence and a broken down truck in the back yard, but Swift's vehicle was not there. Investigator Afton Fletcher prepared an affidavit and search warrant. The district judge of the District Court of Independence County issued the warrant, which permitted the search of the residence and "any and all vehicles and persons present at the scene."[6]

Swift arrived at 44 Reed Road before the execution of the search warrant. None of the officers doing surveillance saw Swift arrive.

When the warrant was executed, some officers went to the back of the residence to secure the rear door. As officers began to knock and announce at the front door, the officers at the rear door heard someone "messing" with the back door knob. Officers entered and saw Dawson and Swift running from the back door into the living room. The men were ordered to lie on the floor. Investigator James Humphrey saw a glass smoking pipe on the floor within a foot of Swift's right hand, but out of Dawson's reach.[7] Both Dawson and Swift were arrested immediately.

In the search of the residence that followed, officers found a small amount of marijuana and a plastic bag containing nearly a pound of methamphetamine.[8] Investigator Humphrey

---

[6]Doc. No. 94-2.

[7]At the suppression hearing, Investigator Humphrey testified that, in his experience, the glass pipe was the sort commonly used to smoke marijuana.

[8]Other items found in the residence included digital scales, various items later determined to be stolen, and several cellular telephones. One of those phones belonged to Swift.

searched Swift's maroon sport utility vehicle parked in the driveway and found a plastic bag

containing another pound of methamphetamine.[9]

Based on the drug evidence found at 44 Reed Road and in Swift's SUV, Investigator

Fletcher got a search warrant for Swift's home. The search at Swift's home turned up $16,000 in

cash and a photograph of marijuana.

Swift moves to suppress evidence obtained by the execution of both search warrants.

### DISCUSSION

Swift presents several arguments that can be handled briefly:

1.      Swift does not have standing to challenge the search of Dawson's mobile home.

By Swift's own assertion, he was a visitor to the mobile home, arriving minutes before the

execution of the search warrant. Casual visitors such as Swift have no legitimate expectation of

privacy in the residence of their hosts.[10]

2.      Swift's arrest was based on probable cause and presents no basis for suppression.

Officers had ample information about Dawson's drug activities, and when they arrived at

44 Reed Road, both Dawson and Swift were alone in a relatively small trailer home, attempting

---

[9]At the suppression hearing, Investigator Humphrey and other officers testified that Swift's SUV was searched solely on the basis of the "any and all vehicles" language of the warrant, and that they had not known who owned any of the vehicles found at 44 Reed Road. (The only other vehicles present at the time of the search were the red car and broken down truck officers had observed before obtaining the warrant.)

[10]See *United States v. Nabors*, 761 F.2d 465, 468 (8th Cir. 1985).

to flee,[11] as officers announced their presence.[12] In such circumstances, it is reasonable for the officers to infer a joint crime.

3.       Contrary to Swift's claim, his cellular telephone was searched under the authority of a warrant.[13]

The remaining issues are whether the searches of Swift's SUV and home were based on probable cause. After reviewing all the evidence, I find that the search of Swift's SUV was not based on probable cause, and the evidence found in it is inadmissible. The search of Swift's home was not based on probable cause either, but the evidence found there is admissible under *United States v. Leon*.[14]

## I.       The Search of Swift's Vehicle Was Not Based On Probable Cause and the Resulting Evidence is Inadmissible

Swift argues that the evidence found in his vehicle must be suppressed because the warrant's "any and all vehicles" language was not based on probable cause, and the *Leon* good-faith exception does not apply.[15] I agree.

### A.       Clarifying the Issue: Probable Cause, not Scope or Particularity

The Prosecution's papers (and arguments at the suppression hearing) tend to focus on two problems not at issue in this case: whether Swift's vehicle was within the scope of the 44 Reed Road warrant, and whether "all vehicles" warrants satisfy the particularity requirement of

---

[11]*See* 2 Kenneth Broun, *McCormick on Evidence* § 263 (6th ed. 2006) (discussing admission by flight and similar acts); see also *Proverbs* 28:1 (Douay Rheims Bible) ("The wicked fleeth, when no man pursueth; But the just, bold as a lion, stand without dread.").

[12]Officers also observed a marijuana pipe on the floor near Swift's hand.

[13]The 44 Reed Road warrant clearly covers cellular telephones. *See* Doc. No. 94-2.

[14]See *United States v. Leon*, 468 U.S. 897 (1984).

[15]Doc. No. 94.

the Fourth Amendment. The crux of this case, however, is that the 44 Reed Road warrant lacked

probable cause to search "any and all vehicles." To resolve confusion, I start by pointing out that

the search of Swift's SUV does not present a scope or particularly issue.

### 1.      Scope is Not an Issue

The Prosecution suggests that the search of Swift's vehicle was legal, based on the Fifth

Circuit Court of Appeals case of *United States v. Gentry*.[16] The Prosecution's reliance on *Gentry*

is misguided. Although the facts in *Gentry* are similar to the facts in this case (*Gentry* also

involves a warrant allowing the search of "any" vehicle at a residence, and the appellant was a

guest at the target residence), the precise question in *Gentry* is unlike the question here. In

*Gentry* the appellant did not dispute the validity of the search warrant, but rather argued that the

warrant did not extend to the vehicles of guests. In other words, the appellant argued that his

vehicle was not within the scope of the warrant.[17] The court disagreed and noted—but did not

hold—that when a warrant, on its face, authorizes the search of "any vehicle," officers may

search the vehicles of guests.[18] In other words, neither the court nor, apparently, the parties,

argued the probable cause issue—which is what Swift argues in this case.

Unlike the appellant in *Gentry*, Swift does not dispute the scope of the 44 Reed Road

warrant.[19] It is not contested that, on its face, the warrant directed the officers to search every

---

[16]839 F.2d 1065, 1069 (5th Cir. 1988).

[17]*Id.*

[18]See *id*. at 1068-69 (the court limited its analysis to defining the physical boundaries of
the search warrant in question).

[19]To the extent that Swift's papers do raise this issue, I agree with the Prosecution that the
reasoning in *Gentry* applies, and Swift's vehicle was within the scope of the 44 Reed Road
warrant. This, however, does not resolve the warrant's probable cause problem.

vehicle at the scene. Instead, Swift argues that the 44 Reed Road warrant is invalid because the underlying affidavit failed to establish probable cause to search every vehicle at the scene.

### 2.   Particularity is Not an Issue

The Prosecution also argues that "all vehicles" warrants satisfy the particularity requirement of the Fourth Amendment. Though some state courts have found otherwise (holding that such "any and all" language is *per se* unconstitutional for lack of particularity), most courts considering this question, including the federal courts, have recognized that "any and all" warrants can satisfy the particularity requirement.[20]   Accordingly, in this case, I assume that the 44 Reed Road warrant does not present a particularity problem.

I note, however, that such "any and all" language is nettlesome. The clear, unambiguous language of the Constitution requires that a warrant describe the place to be searched "with particularity." It requires expanding this plain Constitutional language to find that "any and all vehicles" (belonging to who knows whom) is "particular." A judge ingrafting such an expansive meaning on "with particularity" could rightly be accused of "making law" rather than applying the plain language of the Constitution. I hesitate to do so here, since my philosophy runs to strict construction. That said, I turn to the core issue in this case: the probable cause question.

---

[20]See *United States v. Guadarrama*, 128 F. Supp. 2d 1202, 1206-14 (E.D. Wis. 2001) (collecting cases); and *Owens v. Lott*, 372 F.3d 267, 276 (4th Cir. 2004) *cert. denied*, 543 U.S. 1050 (2005) ("In our view, the inclusion of 'all persons' language in a warrant presents probable cause issues rather than particularity problems.").

**B.      The 44 Reed Road Warrant Was Not Based On Probable Cause to Search "Any and All Vehicles" Found There**

It is well settled that a warrant to search a home for drug-related evidence allows officers to also search residents' vehicles found at the scene.[21] Swift, however, was not a resident at 44 Reed Road; he was a guest.

The Eighth Circuit has held that a warrant for a home does not automatically allow the search of guests' vehicles.[22] To search the vehicles of guests or other callers, an additional probable cause showing is required; otherwise, the warrant lacks probable cause as to those vehicles.[23] Accordingly, the specific question presented by this case is whether the warrant for 44 Reed Road was based on probable cause sufficient to search "any and all vehicles"[24] at the scene, including the vehicles of all guests or other callers.

---

[21]See *e.g.*, *United States v. Bulgatz*, 693 F.2d 728, n. 3 (8th Cir. 1982) (warrant for search of house justifies search of car parked in garage attached to house and controlled by resident).

[22]*United States v. Pennington*, 287 F.3d 739, 747 (8th Cir. 2002) ("a vehicle found on a premises (except, for example, the vehicle of a guest or other caller) is considered to be included within the scope of a warrant authorizing a search of that premises.").

[23]This requirement has been drawn into focus by one commentator as follows:

[W]here the warrant authorizes seizure of objects W, X and Y [here, "any and all vehicles"] but the probable cause showing in the affidavit is only as to objects W and X, [here, only as to the vehicles of residents] . . . the problem is essentially a deficiency in probable cause showing *vis-à-vis* certain of the described items [here, the vehicles of guests and callers]. Such a case, then, is analytically most similar to that in which it turns out the warrant is lacking in any probable cause showing, and ought to be resolved in the same way.

4 Wayne R. LaFave, *Search and Seizure* § 1.3, at 68-69 (1996 & Supp. 2000).

[24]Doc. No. 94-2.

To answer this question, I must review the search warrant application to ensure that the Issuing Judge had a "substantial basis for . . . concluding that probable cause existed"[25] to search "any and all vehicles" at 44 Reed Road. If, as in this case,[26] "the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, [then] only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause."[27] In doing so, I must read the affidavit in "a common-sense and realistic fashion."[28]

### 1.    The 44 Reed Road Affidavit

Investigator Fletcher's affidavit recites the following facts:[29]

On the afternoon of Tuesday September 29th 2009 Administrator Afton Fletcher and other investigators of the 16th Judicial District Drug Task Force met with a Confidential Informant "CI" . . . . The CI advised that he/she had just left [44 Reed Road]. The CI advised that Michael Dawson, who is currently wanted on a felony arrest warrant related to a Methamphetamine conspiracy, was at [44 Reed Road] moments earlier. The CI advised that Dawson is living at the residence and selling "Ice" Methamphetamine and Marijuana there. The CI advised that he/she saw Michael Dawson with a quantity of "Ice" Methamphetamine that was approximately two and a half or three ounces and a set of digital scales while at the residence moments before meeting with officers of the Drug Task Force. The CI also advised that Dawson had a bag of Marijuana lying in his hat on the couch and that Dawson and others at the location were smoking Marijuana at the time.

Administrator Afton Fletcher and other officers of the 16th Judicial District Drug Task Force have knowledge that Dawson is on Supervised Adult Felony Probation for a Marijuana violation. The 16th Judicial District Drug Task Force has been

---

[25]*United States v. Butler*, 594 F.3d 955, 964 (8th Cir. 2010).

[26]At the suppression hearing the Prosecution conceded, and Investigator Fletcher testified, that both warrants in this case were obtained based solely on the information in his affidavits.

[27]*United States v. Solomon*, 432 F.3d 824, 827-28 (8th Cir. 2005).

[28]*United States v. Phillips*, 88 F.3d 582, 585 (8th Cir. 1996).

[29]All errors in original. *See* Doc. No. 94-2.

involved in an investigation on Dawson in the past where they seized over a pound of Marijuana off of him on a search warrant and then another case where they purchased a quarter of a pound of Marijuana off of him using an informant. The 16th Judicial District Drug Task Force also assisted in conducting a controlled purchase of an ounce of "Ice" Methamphetamine from Dawson resulting in the current federal warrant for his arrest. . . .[30]

Notably, the affidavit sets forth no facts about vehicles at 44 Reed Road. The only mention of vehicles comes in a final paragraph of boilerplate[31] language, which offers a generalization (but no specific facts regarding vehicles at 44 Reed Road) based on Investigator Fletcher's experience as an officer:

The facts establishing probable cause to search other buildings, vehicles, or the premises as a whole are as follows: It is the Affiant's experience and training that persons involved in the Manufacture, Possession, and Distribution of controlled substances will often hide and conceal such items as controlled substances, drug paraphernalia, profits or proceeds of drug transactions, and or items used in the Manufacture of controlled substances in their residence and also in buildings, vehicles, and areas outside of the main residence to prevent their discovery and seizure by law enforcement. Some of these items are easily transported, concealed, and/or destroyed.[32]

Based on this affidavit alone, the resulting warrant allows for search of "any and all vehicles and persons present at the scene."[33]

---

[30]Doc. No. 94-2. The affidavit's two remaining paragraphs are not reprinted here. The next paragraph simply describes Investigator Fletcher's experience and training; the final paragraph states that the informant is a reliable informant. *Id.*

[31]I use "boilerplate" because Investigator Fletcher testified that this is language that he adds to the affidavit and warrant for all drug-related residential searches.

[32]Doc. No. 94-2.

[33]*Id.*

**2.      Probable Cause Standard For "Any and All Vehicles" Warrants: The Fourth Amendment**

The Prosecution concedes that neither the Eighth Circuit nor the Supreme Court has said what kind of probable cause showing is required to support an "any and all vehicles" warrant.[34] Before putting the cart before the horse, we should pause to see what the United States Constitution itself has to say about probable cause.

The Fourth Amendment to the United States Constitution says that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." So, the Fourth Amendment establishes two requirements:

1.      Particularity; and

2.      Probable Cause.

Of course, these two requirements must be considered together. The particularity requirement "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."[35] The probable cause requirement, on the other hand, assures that the search "is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause."[36] In other words, these requirements, working together, ensure that a warrant's scope is no broader than the probable cause on which it stands.

So when, as in this case, a warrant's scope is so broad as to encompass "any and all vehicles" at a scene, without naming any vehicle in particular, the probable cause on which it

---

[34]Doc. No. 114.

[35]*Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

[36]*Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

stands must be equally broad. Specifically, the Fourth Amendment requires that the probable cause showing in support of an "any and all vehicles" warrant must demonstrate that, at the time of the search, a vehicle's mere presence at the target location is sufficient to suggest that it contains contraband or evidence of a crime.

### 3.      Support From Other Circuits Considering "All Persons" Warrants

My conclusion as to the Fourth Amendment's probable cause requirement for "any and all vehicles" warrants is supported by other circuits that have considered a different kind of "any and all" warrant: warrants for "all persons" present at a residence.

The majority of courts to consider "all persons" warrants have reached the same conclusion: An "all persons" search warrant is authorized under the Fourth Amendment only if the supporting affidavit establishes probable cause that evidence of illegal activity will be found upon every person likely to fall within the warrant's scope at the time of execution.[37] More than thirty state jurisdictions have adopted this standard.[38] The four federal appellate courts to consider the question also have used this standard.[39]

For example, in *Owens v. Lott*, a 2004 case from the Fourth Circuit Court of Appeals, the court held that "all persons" warrants for private premises only "pass constitutional muster if the affidavit and information provided to the magistrate supply enough detailed information to

---

[37]See *Guadarrama*, 128 F. Supp. at 1206-14.

[38]See *id.* at 1207.

[39]*United States v. Abbott,* 574 F.3d 203, 205 (3d Cir. 2009); *Owens v. Lott*, 372 F.3d 267, 276 (4th Cir. 2004) *cert. denied*, 543 U.S. 1050 (2005); *United States v. Shields*, No. 98-3059, 1999 WL 76890, at *3 (10th Cir. Feb.18, 1999) *cert. denied*, 528 U.S. 839 (1999); *Marks v. Clarke*, 102 F.3d 1012, 1029 (9th Cir. 1996); see also *Guadarrama*, 128 F. Supp. 2d at 1207 (district court collecting cases and adopting the standard); and *United States v. Graham*, 563 F. Supp. 149, 151 (W.D.N.Y. 1983) (district court using the standard).

establish probable cause to believe that all persons on the premises at the time of the search are involved in the criminal activity."[40]

The Fourth Circuit agreed with the district court that the affidavit in support of an "all persons" warrant did not supply probable cause where "[t]he only justification presented to the magistrate for the search of all persons at the premise[s] was [the officer's] experience in drug enforcement . . . that subjects present at the scene of [an] illegal drug distribution . . . commonly have drugs in their possession."[41]  The Fourth Circuit observed: "This generalization was and is undoubtedly true, but it did not provide the kind of particularized information that would have permitted the magistrate to reasonably conclude that there was a fair probability that any person seen by officers on the premises was there to partake in one side of a drug transaction or another."[42] The Fourth Circuit held that the "all persons" language of the warrant was not based on probable cause.[43]

To clarify its holding, the Fourth Circuit listed hypothetical factors that could support a "all persons" warrant, including: facts demonstrating a history of drug dealers and users frequenting the target residence; evidence of regular traffic of individuals to and from the residence; or facts indicating that the home's location and surrounding neighborhood were likely to attract only people involved in the drug trade.[44] Absent a showing of these factors in the warrant at issue, the Fourth Circuit concluded:

---

[40]*Owens*, 372 F.3d at 276.

[41]*Id.* at 276-77 (internal citations and quotes omitted).

[42]*Id.*

[43]*Id.*

[44]*Id.*

At bottom, the search warrant authorized the search of individuals in this case based on nothing more than their proximity to a place where criminal activity may or may not have occurred. And, as the Supreme Court has explained, a person's mere propinquity to suspected criminal activity does not, without more, give rise to probable cause to search that person.[45]

The reasoning in *Owens* is basic. It applies the clearly established Fourth Amendment requirement that a warrant's scope be no broader than the probable cause on which it stands. So when a warrant allows the search of "all persons" at a target location, the probable cause showing must implicate any and all persons at the target location at the time of the search. Similarly, an "all vehicles" warrant must be based on a probable cause showing that implicates any and all vehicles at the target location, including the vehicles of guests and other callers present at the time of the search.

### 4.      The Affidavit is Insufficient to Support the Warrant's "Any and All Vehicles" Language

Investigator Fletcher's affidavit provides no facts explicitly implicating guests or their vehicles in drug activity. Instead, the affidavit alleges that Dawson was selling drugs from 44 Reed Road and that Dawson and "others" were smoking marijuana there.[46] But, these allegations are unsubstantiated and do not specifically implicate any guest. The affidavit does not name the "others" smoking marijuana, or say whether they are guests or residents of 44 Reed Road. Nor does the affidavit allege that the informant ever saw Dawson, or anyone else, actually purchasing or selling drugs at 44 Reed Road. It does not say when any alleged drug sales occurred. Nor does the affidavit contain any allegation that guests are coming to the residence for the purpose of engaging in illegal drug activity. Instead, the affidavit starts with the informant's unsubstantiated allegation of drug sales at some unknown time in the past. It leaves to inference that *some* guests

---

[45]*Owens*, 372 F.3d at 279.

[46]Doc. No. 94-2.

might be coming to 44 Reed Road to buy drugs, then adds the further inference (through Investigator Fletcher's boilerplate additions) that those guests might have contraband or evidence in their cars.

The sum of these inferences drawn from inferences (otherwise known as speculation)[47] cannot supply probable cause to search *all* persons and vehicles at 44 Reed Road. An informant's unsubstantiated allegation that drugs were being sold at some unknown time in the past is far from enough to substantiate an "all persons" warrant for a residence.[48] And, Investigator Fletcher's generalization about the vehicles of drug users, while probably true, does not provide information implicating each and every vehicle at a family home, during daytime hours, when unsuspecting friends, neighbors, or laborers could be present.[49]

Because the "any and all vehicles" language was not based on probable cause, the search of Swift's SUV was unconstitutional under the Fourth Amendment. The remaining question is whether the Fourth Amendment's exclusionary rule requires suppression of the evidence found in Swift's vehicle. I find that it does.

---

[47] See *Yancey v. State*, 44 S.W.3d 315, 322 (Ark. 2001) ("Reasonable inferences may be drawn from positive or circumstantial evidence, but to allow inferences to be drawn from other inferences, or presumptions to be indulged from other presumptions, would carry the deduction into the realm of speculation and conjecture.").

[48] See, *e.g.*, *United States v. Abbott*, 574 F.3d 203, 205 (3d Cir. 2009) (specifically disapproving of a drug-focused search of "all persons" present in a private residence, absent a surveilled controlled purchase immediately beforehand); *Marks v. Clarke*, 102 F.3d 1012, 1029 (9th Cir. 1996) (suggesting that "all persons" warrants are never appropriate "with respect to a raid on any family home where innocent family members or friends might be residing or visiting").

[49] See *Owens*, 372 F.3d at 276.

### B.      The *Leon* Good-Faith Exception Does Not Apply to the SUV Search

"[E]vidence obtained as a result of a defective search warrant is generally inadmissible."[50] Here, however, the Prosecution argues that the *Leon* good-faith exception saves the evidence found in Swift's vehicle (nearly a pound of methamphetamine) from suppression.[51] I disagree.

Under the good-faith exception,"evidence seized pursuant to a search warrant . . . that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable."[52] The rationale for the good-faith exception is that "no justification exists to exclude evidence when an officer acting with objective good faith has obtained a search warrant from a judge and acted within its scope."[53] On the other hand, suppression should be ordered—though only on a case-by-case basis—"in those unusual cases in which exclusion will further the purposes of the exclusionary rule."[54] For example, exclusion is appropriate, and the *Leon* exception is inapplicable, if "the issuing magistrate wholly abandoned his judicial role."[55]

When an issuing magistrate abandons his judicial role, suppression of the evidence is appropriate because "no reasonably well trained officer should rely on the warrant."[56]  The

---

[50]*United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007).

[51]See *United States v. Leon*, 468 U.S. 897 (1984). The Prosecution conceded at the suppression hearing that no other doctrine of law (*e.g*., inevitable discovery, attenuation, etc.) may save the evidence in this case from suppression.

[52]*United States v. Proell*, 485 F.3d 427, 430-31 (8th Cir. 2007).

[53]*Id.*

[54]*Leon*, 468 U.S. at 922.

[55]*Id.*

[56]*Id.* at 923 (internal quotations and citations omitted).

15

warrant requirement of the Fourth Amendment interposes a neutral figure between the citizen and the police officer "engaged in the often competitive enterprise of ferreting out crime."[57] So, the issuing judge must "perform his neutral and detached function and not serve merely as a rubber stamp for the police."[58] "A magistrate failing to manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application and who acts instead as an adjunct law enforcement officer cannot provide valid authorization for an otherwise unconstitutional search."[59]

I find that the Issuing Judge in this case was not acting in a neutral and detached manner when he issued the warrant allowing the search of "any and all vehicles and persons" at 44 Reed Road. In support of this conclusion, I first reiterate that Investigator Fletcher's affidavit did not provide probable cause sufficient to justify a search of "all vehicles" or "all persons." Instead, the affidavit and warrant contained expansive boilerplate language amounting to a general warrant. The Issuing Judge signed both documents without question or hesitation. (Investigator Fletcher testified that he presented both the affidavit and the warrant to the Issuing Judge simultaneously on September 29, 2009, at 2:37 p.m., and that after he signed the attestation in the affidavit, the Issuing Judge immediately signed both the affidavit and the warrant.[60] This

---

[57]*Johnson v. United States*, 333 U.S. 10, 14 (1948).

[58]*Id.* (internal citations omitted).

[59]*Id*.

[60]My clear recollection of Investigator Fletcher's testimony is that the warrant was presented and signed at 2:37 p.m. Surely the immediate signing doesn't two-block with "detachment." If it does, Webster, Garner and other lexicographers need to amend their dictionaries.

chronology is supported by the signature blocks on both documents: the Issuing Judge signed both the affidavit and the warrant at 2:37 p.m.)[61]

The totality of these circumstances makes it clear to me that the Issuing Judge was not acting in a neutral and detached manner when he issued the search warrant for 44 Reed Road. I do not believe that a neutral and detached judge could pass eyes over language as Constitutionally nettlesome as "any and all vehicles and persons" without serious pause. This is particularly true when the language is contained in boilerplate paragraphs of a "bare bones" affidavit prepared by the applying officer. The Fourth Amendment requires a neutral figure to step between citizens and officers; here, in contrast, the Issuing Judge effectively acted as an adjunct law enforcement officer.

Exclusion of the evidence found in Swift's SUV will further the purpose of the exclusionary rule. It may be, in some other case, that drugs are likely to be found in every vehicle present at a residential target location; but, the Fourth Amendment requires an officer to demonstrate this on sworn, particularized facts in front of a neutral and detached magistrate. Investigator Fletcher testified that he simply includes the "any and all vehicles and persons present at the scene" language in every affidavit and warrant he writes for the search of a residence. In other words, officers have taken up the habit of using boilerplate language to turn every drug-related search of a private residence into a general warrant to search each and every person and vehicle within the curtilage of the residence.[62] In response, judges sign off on that boilerplate language, despite the absence of a probable cause showing remotely sufficient to

---

[61]*See* Doc. No. 94-2.

[62]At the suppression hearing, the Prosecution conceded that, had the warrant been executed during an ill-timed Super Bowl party, this boilerplate language would allow for the search of every guest's vehicle—or the vehicle of a resident's grandmother during an ill-timed pie delivery.

justify such a sweeping warrant.[63] This scenario presents one of those "unusual cases in which exclusion will further the purposes of the exclusionary rule."[64] Because officers cannot come to rely on judges providing valid authorization for otherwise unconstitutional searches, all evidence discovered in Swift's vehicle is inadmissable under the Fourth Amendment exclusionary rule.

I do not exclude this evidence lightly. I believe that the drug at issue in this case—methamphetamine—is vicious. But, as the Seventh Circuit has observed, "[t]he war against drugs cannot be fought with unconstitutional procedures."[65] Here, the Constitution posed no barrier to officers finding the drugs in Swift's vehicle: given the circumstances of Swift's arrest, officers could have easily obtained a warrant for the search of his vehicle. The exclusionary rule serves to ensure that such procedures are followed in the future.

## II.    The Search of Swift's Residence Was Not Based on Probable Cause, But the Evidence is Admissible Under *Leon*.

Swift argues that the affidavit in support of the warrant for his home failed to establish a connection between his home and his alleged involvement in drug trafficking.[66] I agree, but find that, under the law of this circuit, the *Leon* good-faith exception saves the evidence from suppression.

---

[63]In support of its argument that the good-faith exception should apply here, the Prosecution argues that the affidavit and warrant in this case were "consistent with others [Investigator Fletcher] had prepared in the past that included the 'any and all vehicles' language and which were approved by various judicial officers." Doc. No. 181. The Prosecution intends this fact to support Investigator Fletcher's objective reasonableness in relying on the warrant. I, on the other hand, view it as an indication that the unreasonable has become too common. In other words, it seem that when improper procedures become common place, they become something a reasonable officer can rely upon.

[64]*Leon*, 468 U.S. at 922.

[65]*United States v. Novak*, 870 F.2d 1345, 1353 (7th Cir. 1989).

[66]*Id.*

Investigator Fletcher's affidavit for the warrant to search Swift's home sets out the fact that Swift was arrested for possession of a pound of methamphetamine found in the trailer at 44 Reed Road, as well as the pound of methamphetamine found in his SUV.[67] The affidavit also contains the same boilerplate generalization that drug traffickers often hide contraband or evidence in their homes and vehicles.[68] The theme of the affidavit is this: Swift, as a probable drug trafficker, is likely to have evidence or contraband at his home.

The affidavit, however, gives no facts connecting Swift's home to drug activity. The question is whether the bare inference that drug traffickers may keep contraband or evidence in their home is always sufficient to provide probable cause to search their home.[69]

The Eighth Circuit has been clear that it has not adopted a *per se* rule that probable cause to arrest a drug trafficker establishes an inference that there is evidence at his residence.[70] Instead, the Eighth Circuit has found probable cause only in cases where the affidavit contains at least some information connecting the drug activity to the home.[71] Because Investigator

---

[67]Doc. No. 94-2.

[68]*Id.*

[69]At the suppression hearing, the Prosecution conceded that this affidavit's inference would allow the search of Swift's second home (if he had one) in New York City, New York, as well as a third (if he had it) in Memphis, Tennessee.

[70]See *United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007).

[71]See, *e.g.*, *United States v. Luloff*, 15 F.3d 763, 768 (8th Cir. 1994). In *Luloff*, the defendant moved to suppress evidence seized during the search of his residence. The officers stated that the inference to believe there would be evidence of drug trafficking at the home was based on their experience. *Id.* Unlike the present case, the affidavit supporting the warrant also contained information, provided by reliable witnesses and informants, that tended to evidence that the defendant continued to engage in repetitive drug trafficking activity for almost a year prior to the search of his home, and also that such activity had taken place in the home to be searched. *Id.*

Fletcher's affidavit contains no such information, the warrant for Swift's home was not founded on probable cause, and the search violated the Fourth Amendment.

Still, the evidence is admissible at trial. The Eighth Circuit has often held that officers can reasonably rely on search warrants that lack any connection between a drug trafficker and his home, and that the resulting evidence is admissible under *Leon*.[72] If I were writing on a clean slate, or even a smudged slate, I would undoubtedly hold otherwise on this point. But I am not writing on a clean slate, and I am not permitted to hold otherwise in the face of clear, repeated decisions of the circuit court.[73]

---

[72]See, *e.g.*, *United States v. Pruett*, 501 F.3d 976, 982 (8th Cir. 2007) (overruled on other grounds) (holding that the warrant application at issue did not specifically mention the presence of criminal activity at defendant's residence but that the executing officers reasonably relied on warrant); *United States v. Carpenter*, 341 F.3d 666, 671 (8th Cir. 2003) (holding that an affidavit failed to establish a connection between a residence and contraband, but that it was not "entirely unreasonable" for the executing officer "to believe that such an inference was permissible."); *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001) (holding that executing officers reasonably relied on judge's determination that there was probable cause to search motel room even though search warrant affidavit failed to mention a connection between motel room and criminal activity).

[73]Having served 3 years, 5 months, 22 days, and 5 hours in the U.S. Navy, I know that I am obliged to follow orders of a superior, regardless of whether I agree with such an order, and regardless of whether I like it. On this point, I hark once again to some words in the old Johnny Cash song: "I don't like it, but I guess things happen that way."

**<u>CONCLUSION</u>**

For the reasons set out above, Defendant's Motion to Suppress (Doc. No. 94) is

GRANTED IN PART, in that evidence discovered in Swift's vehicle is inadmissible under the

Fourth Amendment's exclusionary rule.

Swift's Motion is DENIED IN PART, because: (1) he does not have standing to

challenge the validity of the 44 Reed Road search warrant as to the residence; (2) he was arrested

with probable cause; (3) his cellular telephone was within the scope of the warrant for 44 Reed

Road; and, (4) although the search of Swift's residence was unconstitutional, the evidence found

there is admissible under *Leon*.

IT IS SO ORDERED this 1st day of July, 2010.

/s/ Wm. R. Wilson, Jr.         
UNITED STATES DISTRICT JUDGE
